# MURPHY *v.* MEISSNER.

### PATENTS; INTERFERENCE.

1. Where the three tribunals of the Patent Office have decided adversely to the junior party to an interference, he must, in order to prevail in this court, show a clear case of error in those decisions.

2. The tribunals of the Patent Office will be held to have been warranted in awarding priority of invention to one of the parties to an interference, when the utmost that can be said in favor of the other party is that the testimony is evenly balanced,—especially when it also appears that the circumstances in evidence are against his contention.

3. Where the question involved in an interference case is one of originality as distinguished from priority of invention, and it appears that the junior party filed his application only because the senior party refused to assign his invention to the company which employed him, and the senior party's application was filed at the solicitation of such company, it was *held* that this circumstance showed priority of invention on the part of the senior party.

No. 256.   Patent Appeals.   Submitted November 9, 1904.   Decided December, 6, 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                          *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. James A. Carr* and *Mr. Harold H. Simms* for the appellant.

*Mr. Edward Rector, Mr. Samuel E. Hibben, Mr. L. S. Bacon,* and *Mr. J. H. Milans* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference case, wherein the controversy is as to the ownership of an improvement in pneumatic riveting hammers, described technically in seven several counts, as follows:

"1. A pneumatic hammer comprising a handle portion having ports for the admission and release of air, a cylinder, a piston in said cylinder, and a valve for controlling the admission and release of air, said valve being located back of said cylinder and in alinement therewith, and an imperforate plate in the rear end of the said cylinder.

"2. A pneumatic hammer comprising a cylinder having ports for the admission and release of air, an imperforate plate at the rear end of said cylinder, a piston in said cylinder, and a handle clamped to said cylinder and having a cylindrical socket portion, a valve bushing in said socket portion, and a valve in said bushing in alinement with the cylinder, the pressure-admission part extending from the space back of said plate to a point in the piston chamber sufficiently far from the rear end thereof to constitute an air cushion therein.

"3. A pneumatic hammer comprising a cylinder having ports for the admission and release of air, a piston in said cylinder, and a handle clamped to said cylinder, and having a cylindrical socket portion, the outer portion of said socket being enlarged and the end of said cylinder being reduced to fit tight therein.

"4. A pneumatic hammer comprising a cylinder having ports for the admission and release of air, a piston in said cylinder, and a handle clamped to said cylinder and having a cylindrical socket portion, the outer portion of said socket being enlarged and the end of said cylinder being reduced to fit tight therein,

and a valve bushing in the rear portion of said socket provided with ports for the admission and release of air, and a longitudinally movable valve in said bushing adapted to co-operate with said bushing ports.

"5. A pneumatic hammer comprising a cylinder having ports for the admission and release of air, a piston in said cylinder, and a handle clamped to said cylinder, and having a cylindrical socket portion, the outer portion of said socket being enlarged and the end of said cylinder being reduced to fit tight therein, and a valve bushing in the rear portion of said socket provided with ports for the admission and release of air, and having its bore enlarged at the rear end, a cylindrical valve in said bushing, and having a shoulder at the rear end fitting in the enlarged portion of the bushing bore and having grooves for co-operating with ports in said bushing, one of the ports in said bushing being located at the rear of said valve and communicating through a passageway in the socket portion and cylinder wall with a port near the middle portion of the cylinder.

"6. A pneumatic hammer comprising a cylinder having passageway for the admission and release of pressure and a reciprocating valve for controlling said passageways, said valve having one end fitting in the valve chamber and having its other end arranged to permit a leakage of air into one end of the valve chamber to insure the movement of said valve.

"7. A pneumatic hammer comprising a cylinder, a piston therein, a handle having a cylindrical socket portion, a valve bushing in said socket and a valve in said bushing, the rear end of said valve being enlarged and fitting in the enlarged bore of said bushing, and the front end of said valve fitting loosely in said bushing to permit the leakage of air by said front end, said hammer being provided with ports and passageways arranged to be controlled by said valve and said piston."

There are three elements of invention claimed here,—in counts 1 and 2 what is known as a "cushion plate," in counts 3, 4, and 5 a "reduced-end construction," and in counts 6 and 7 a constant leakage of air into one end of the valve chamber. The contestants for the ownership of the invention are not rival, in-

dependent inventors who made the discovery unknown to each other. They were both at the time of such discovery in the employment of a company in St. Louis, in the State of Missouri, known as the Standard Railway Equipment Company, engaged in the business of the manufacture of railway supplies, and whereof Peter H. Murphy, the father of Albert C. Murphy, the appellant, was the president and practically the owner, and which is the assignee of the application of Albert C. Murphy. Albert C. Murphy was and yet is the superintendent of the pneumatic-tool department in the shop of this company; and the appellee, Edward C. Meissner, according to the testimony of Peter H. Murphy, was employed in the shop "as draftsman, with the understanding that he was to improve, invent, and produce pneumatic tools for the benefit and use and sale of the Standard Railway Equipment Company," which position, it is added, "was given to him distinctly and squarely and fairly upon those grounds, and the title of mechanical engineer was used by Mr. Meissner with the view of giving tone to the position." According to the same testimony, "it was Mr. Meissner's duty to work on the development of pneumatic tools in that shop. That is what he was paid for; that is what he was hired for; that is what he received his compensation for, and no other consideration in the matter of riveters." The situation and the circumstances were such that, as it is virtually conceded on both sides, the invention was not made by each independently, but was derived by one from the other. The question for determination, therefore, is not one of priority of invention, but of originality of invention. It may be added that Meissner left the employment of the Standard Railway Equipment Company on or about April 5, 1901; and that he subsequently assigned his invention to the Chicago Pneumatic Tool Company. Consequently the contest for the owership of the invention is really between the two companies mentioned, and is prosecuted by them.

Meissner was the first to file his application in the Patent Office, which he did on November 12, 1900. Murphy followed six months afterwards, the date of his application being May 13, 1901. Upon the testimony taken by the parties, the Examiner

of Interferences decided in favor of the senior applicant Meissner: the board of examiners affirmed the decision; and the Commissioner of Patents affirmed the decision of the board of examiners. From the Commissioner's decision Albert C. Murphy has taken the present appeal to this court.

The appellant comes here with the double burden of being the junior party in his application to the Patent Office and of having the three concurrent opinions of the tribunals of that office against him. It behooves him, therefore, to show a clear case of error in these decisions. This we think he has wholly failed to do. From a careful perusal of the record and a full consideration of the briefs and arguments of the parties, we think that the utmost that could be said in favor of the appellant is that the oral testimony is evenly balanced and the circumstances are all against the contention of the appellant. We think that the tribunals of the Patent Office were fully warranted by these circumstances in awarding judgment of priority of invention to the appellee. Each of these tribunals has weighed the testimony carefully; and it would serve no good purpose, in a case where there is no doubtful question of law involved, to add another concurrent opinion to the three which have been rendered in the office. It must suffice to say that the question is really not one of priority of invention, but of originality; that the relations of the parties to each other were such that one must have derived the invention from the other; that the appellee shows the earlier conception and reduction to practice; and that the testimony of the principal witness for the appellant shows quite conclusively that the invention belonged to the appellee, and not to the appellant. This witness, who was the person most interested in sustaining the claim of the appellant, testified that the appellee filed his application at the request and solicitation of the witness, and that no other application would have been filed if the appellee had not refused to assign his application to the company which employed him, after the application had been filed. And this witness was a man familiar with patents, and had taken out many himself. It cannot be supposed that he would have urged the appellee to make the application if the invention had been really

made by his own son, the appellant here.    But, for the reasons already stated, we need not further elaborate the case.

The decision of the Commissioner of Patents in awarding judgment of priority of invention to the appellee, Edward C. Meissner, is affirmed.

The clerk will certify this opinion and the proceedings in this court in the premises to the Commissioner of Patents according to law.                                                    *Affirmed.*

A motion for a rehearing was denied.